RECEIVED

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA 2013 MAR 25   AM 11: 20
#### FORT MYERS DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS. FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF FLORIDA, EX REL. MARIELA BARNES, | : : : | CIVIL ACTION NO.: |
| Plaintiffs | : : | **FILED IN CAMERA AND UNDER SEAL** |
| vs. | : : | |
| DR. DAVID SPELLBERG , 21ˢᵗ CENTURY ONCOLOGY and NAPLES UROLOGY ASSOCIATES | : : | 2: 13 -c v 228 -FtM- 99DNF |

## COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE QUI TAM PROVISIONS OF THE FEDERAL FALSE CLAIMS ACT AND THE FLORIDA FALSE CLAIMS ACT AND DEMAND FOR JURY TRIAL

Relator, Mariela Barnes ("Ms. Barnes" or "Relator"), by and through her undersigned

counsel, on behalf of the United States of America ("United States") and the State of Florida

("Florida") bring this action against Dr. David Spellberg, ("Spellberg"), 21ˢᵗ Century Oncology,

LLC ("21ˢᵗ Century") and Naples Urology Associates ("Naples Urology") (collectively

hereinafter "Defendants"), under the False Claims Act, 31 U.S.C. § 3729 et. seq. ("FCA") and

the Florida False Claims Act, Fla. Stat. § 68.081 et seq ("Fla. FCA"). In support of the

Complaint, Relator alleges as follows:

### I.    INTRODUCTION

1.    This is an action to recover damages and civil penalties on behalf of the

United States and Florida against Defendants in submitting and causing to be submitted false

claims to the United States and Florida under the government healthcare programs, Medicare and

Medicaid ("Government Health Care Programs"), from at least sometime in 2008 through 2012

("Relevant Period"), and on information and belief, to the present.



2.　　　During the Relevant Period, Spellberg has fraudulently and systematically billed and/or caused to be billed and, on information and belief, continues to bill and submit claims and/or cause bills and claims to be submitted to Government Health Care Programs which are false or fraudulent and/or contain false and fraudulent misrepresentations regarding types and extent of services rendered, the medical necessity of such services and/or up coding and billing for services never rendered.

3.　　During the Relevant Period, Naples Urology has fraudulently and systematically reviewed, approved and submitted and/or caused to be submitted billing for services allegedly provided by Spellberg, and on information and belief other physicians, knowing it was unnecessary and contained false and fraudulent misrepresentations.

4.　　　During the Relevant Period, 21st Century has fraudulently and systematically reviewed, approved and submitted and/or caused to be submitted billing for services allegedly provided by Spellberg, and on information and belief other physicians, including unnecessary testing, knowing it was unnecessary and contained false and fraudulent misrepresentations

5.　　　In addition, 21st Century provided incentives to Spellberg and, on information and belief, to other physicians, to encourage and insure the continuation of the fraudulent practices and false billing.

6.　　　Defendants perpetrated this scheme in order to increase billings to and receive revenue from Government Health Care Programs to which they were not entitled.

7.　　　In addition, Defendants regularly retaliated against Ms. Barnes by subjecting her to unfair and discriminatory working conditions and, ultimately creating

2

conditions which forced her exit from her employment when she challenged and objected to the

false and fraudulent billing practices being perpetrated by Defendants.

## II.    JURISDICTION AND VENUE

8.     These claims arise under the Qui Tam  provisions of the FCA and the

Florida FCA.  This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331 and 31 U.S.C. § 3732 which specifically confer jurisdiction on this Court for

actions brought pursuant to 31 U.S.C. § § 3729 and 3730.

9.     Personal jurisdiction and venue for this action are predicated on 31 U.S.C.

§ 3732(a) which provides:  "any action brought under § 3730 may be brought in any judicial

district in which the defendant, or in the case of multiple defendants, any one defendant, can be

found, resides, transacts business or in which any act proscribed by § 3729 occurred.  Defendants

reside in and/or are Florida corporations which conduct their business in, among other places,

Collier County in the Middle District of Florida.

10.    This Court has supplemental jurisdiction over the claims brought pursuant

to Qui Tam provisions of the Florida FCA pursuant to 28 U.S.C. §1367 which provides that "in

any civil action of which the district courts have original jurisdiction, the district courts shall

have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article

III of the United States Constitution."

11.    Under § 3730(b)(2) of the FCA, this Complaint is to be filed *In Camera*

and remain under seal for a period of at least sixty (60) days, and shall not be served on the

Defendant until the Court so orders.  The government may elect to intervene and proceed with

3

the Act within sixty (60) days after it receives both the Complaint and the material evidence and information.

### III.    PARTIES

12.     Relator is a resident of Collier County, Florida. She has worked as a medical assistant in Florida. Relator began work for Spellberg while he was the principal owner of Naples Urology. She remained under the direct supervision of Spellberg after Naples Urology was purchased by 21st Century in late December 2009. Following the purchase in late December 2009, Relator became an employee of 21st Century.

13.     Ms. Barnes' employment with 21st Century and Naples Urology was abruptly and wrongfully terminated on or about July 31, 2012, as a direct result of having confronted her employer with information concerning Spellberg's fraudulent practices.

14.     Defendant Spellberg is a citizen and resident of Naples, Florida. Dr. Spellberg is a board certified urologist.

15.     Defendant 21st Century is a privately held corporation with approximately 100 centers clustered into regional networks across the United States. Its corporate headquarters is located in Fort Myers, Florida.

16.     Since the sale of Defendant Naples Urology Associates to 21st Century, Naples Urology is a division of 21st Century, having five (5) offices in southwest Florida.

17.     Naples Urology holds itself out as "specializing in the diagnosis and treatment of serious disorders of the urologic system in the most effective, least invasive manner possible".

4

18.     During the relevant period, Spellberg, acting with, through and under the supervision of 21st Century and Naples Urology, fraudulently billed Government Health Care Programs for fluorescence in situ-hybridization cytology ("FISH") tests either supported by the use of altered and falsified testing results or absent the performance of necessary confirming diagnostic procedures.

19.     During the relevant period, Spellberg, acting with, through and under the supervision of 21st Century and Naples Urology, fraudulently billed government health care programs for Evaluation and Management ("E&M") levels of office visits for services that were not rendered and could not have been physically accomplished in the time allotted to the visit.

20.     The policies and practices carried out by Spellberg were established and/or ratified at the highest corporate levels of 21st Century and Naples Urology.

21.     On information and belief, 21st Century conducted medical record reviews of Spellberg's practices.

22.     During the Relevant Period, Naples Urology and 21st Century acted through their principals, officers, agents and employees, and the acts of Naples Urology's and 21st Century's principals, officers, agents and employees were within the scope of their agency and employment.

23.     As a result of her employment at Naples Urology and 21st Century, Relator has first-hand knowledge and information regarding the business operations, unnecessary medical procedures and fraudulent billing practices of Defendants in the submission of false claims to be paid with Government Health Care Program funds.

5

24.     Relator brings this action based on direct and independent knowledge. None of the actionable allegations set forth in this Complaint is based upon a public disclosure as set forth in 31 U.S.C. § 3730(e)(4). Notwithstanding same, Relator is an original source of the facts alleged in this Complaint. As a result of her employment with 21st Century and Naples Urology, Relator has firsthand knowledge of the business operations of 21st Century and Naples Urology and their intentional and/or reckless disregard and fraudulent conduct in connection with their knowledge and supervision of the illegal, fraudulent and unnecessary medical practices carried out by Spellberg, and upon information and belief others.

25.     Prior to filing this Complaint and her termination in late July 2012, Relator repeatedly confronted Spellberg and her supervisors at 21st Century and Naples Urology with her concerns about Spellberg's false and fraudulent conduct, to no avail.

26.     On November 2, 2012, prior to filing this Complaint, Relator, through her counsel, provided information regarding Defendants' conduct as detailed herein to the United States Attorneys' office in the Middle District of Florida.

27.     Simultaneously with the filing of the Complaint, as required under the FCA, Relator has provided to the Attorney General of the United States, the United States Attorney for the Middle District of Florida and the State Attorney General of Florida, a statement of all material evidence and information relating to the Complaint. ("Disclosure Statement"). The Disclosure Statement supports the existence of false claims by Defendants.

## IV.     STATUTORY AND REGULATORY BACKGROUND

### A.     The False Claims Act

28.     The FCA imposes liability upon any person who (a) "knowingly presents or causes to be presented [to the Government] a false or fraudulent claim for payment or

6

DM1\3640890.4

approval" or (b) "knowingly makes, uses, causes to be made or used, a false record or statement material to a false or fraudulent claim" 31 U.S.C. § 3729(a)(1)(A) and (B) as amended.

29.     The FCA imposes liability not only for intentionally false or fraudulent conduct, but also where the conduct is merely "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(iii). The Fla. FCA has a nearly identical provision. Fla. Stat. § 68.082(1)(c).

30.     The FCA broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property…that…is made to a contractor, grantee or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, if the United States Government—(i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse any portion of the money or property requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

31.     The Fla. FCA has a nearly identical definition of claim only substituting Florida or any agency thereof for the United States. Fla. Stat. § 68.082(1)(b).

B.      **Government Health Care Programs**

32.     Medicare is a government financial health insurance program administered by the Social Security Administration of the United States. Medicare was promulgated to provide payment for medical services, durable medical equipment and other related health items for individuals 65 and over. Medicare also makes payment for certain health services provided to additional classes of certain individual healthcare patients pursuant to federal regulations.

7

33.     The federal government enacted the Medicaid program in 1965 as a cooperative undertaking between the federal and state governments to help the states provide health care to low-income individuals. 42 U.S.C. §§ 1396-1396v. The Medicaid program pays for services pursuant to plans developed by the states and approved by the U.S. Department of Health and Human Services ("HHS") Secretary through the Center for Medicare and Medicaid Services ("CMS"). States pay doctors, hospitals, pharmacies, and other providers and suppliers of medical items and services according to established rates. See 42 U.S.C. §§ 1396b(a)(1), 1903(a)(1). The federal government then pays each state a statutorily established share of "the total amount expended ... as medical assistance under the State plan ..." See 42 U.S.C. § 1396b(a)(1). This federal-to-state payment is known as federal financial participation ("FFP").

## V.     FACTUAL BACKGROUND/OVERVIEW

34.     Spellberg is a urologist, licensed to practice in the State of Florida, who has knowingly billed Government Health Care Programs, for among other things, unnecessary FISH tests.

35.     The FISH test is a medical procedure utilized on rare occasions by urologists as a medical screen in making the determination of the existence of an aggressive bladder cancer. It maps the genetic materials in cells and identifies genetic abnormalities too small to be seen microscopically. Its most common use is as a surveillance tool in established primary and secondary adenocarcinoma and most importantly, after a full urologic work up. It is also used to assist in the prediction of patient outcome and response to various chemotherapies.

36.     Medical sources advise that even among those patients most prone to bladder cancer, the amount of blood in the urine sufficient to warrant a FISH test occurs in approximately 3 out of every 1000 urine tested patients.

8

37.    According to the controlling regulatory guidelines for the Florida Medicare Contractor ("MAC"), First Coast Service Options, Inc., Local Coverage Determination ("LCD"), the FISH test is to be used in conjunction with, and not in lieu of, current diagnostic procedures.

38.    In order to warrant the expensive FISH test, other diagnostic procedures that are usually performed include: a follow-up urinalysis, cystoscopy, IVP intravenous pyleogram or computerized tomography ("CT").

39.    The urologic work up usually considered necessary to justify a FISH test typically is billed using CPT code 99214 (Established patient – Level 4 visit). An E&M level 4 visit requires two of the following key components: history, physical examination and medical decision making.

40.    AMA coding literature for E&M level 4 visit suggests a visit time of approximately 20 to 25 minutes.

## VI.    DEFENDANTS' FRAUDULENT SCHEMES AND SUBMISSION OF FALSE CLAIMS

### A.    Spellberg's Fraudulent Conduct in Ordering Unnecessary FISH Tests

41.    From the commencement of Relator's employment with Defendants, she gained knowledge of, witnessed the submission of and was instructed and ordered to provide false and misleading information required to warrant the unnecessary FISH tests.

42.    Contrary to standard practice, Spellberg systematically and with the medical knowledge to know that the tests were not necessary, ordered the expensive FISH test for the majority of patients that he sees, particularly his Medicare patients.

9

43.     Spellberg has done so using several false and fraudulent methods. First, Spellberg has concealed his false billings by destroying evidence showing the absence of the need and markers, which would have proven that the FISH testing he ordered, for which he billed Government Health Care Programs, was unnecessary.

44.     On many occasions Spellberg ordered unnecessary FISH testing through the falsification and alteration of urine test records. After a patient's urine tested negative for blood in the urine, Spellberg would alter the patient's electronic medical record to reflect a trace of blood and then falsely claim a diagnosis of hematuria.

45.     Having created false back up records to support his fraudulent billings, Spellberg then ordered the original urine test results, which would have revealed the unnecessary need for the falsely billed FISH test, to be shredded.

46.     On several occasions, Relator was able to retain the actual original urine testing record to show the negative result rather than the trace or positive result which Spellberg falsely entered into the electronic record.

47.     In addition to falsifying urine test results, on many occasions, Spellberg ordered FISH testing without the full urologic work up necessary to justify ordering that testing. Spellberg would simply check the diagnosis hematuria on the patient's chart and order the expensive FISH test, without performing any other examination or less expensive testing .

48.     A diagnosis of hematuria in and of itself does not mandate a FISH test to be performed. Hematuria is a symptom of many medical conditions other than bladder cancer. Without other diagnostic procedures, there is no medical necessity for a FISH test based solely on a hematuria diagnosis.

49.     In other instances, Spellberg fraudulently ordered the FISH test without any hematuria diagnosis or any other diagnosis in the medical record to warrant the expensive FISH test.

50.     Review of a very small sampling of Spellberg's patient records revealed that over a mere five day period in 2012, 79 FISH tests were ordered. Of the 79 FISH tests ordered, 46 or 58% had a record for blood in the urine or hematuria. There were 33 instances (42%) in which FISH tests were ordered where the record showed negative results in the urine test. There was absolutely no showing of medical necessity to these FISH tests.

**B.      Spellberg's False Billing for Level 4 Patient Encounters**

51.     Spellberg routinely falsely bills Government Health Care Programs for the full urologic work up necessary to justify the FISH test using E&M code 99214.

52.     Review of a small sampling of medical records over a two year period between 2010 and 2012, reveals FISH tests ordered by Spellberg but a conspicuous absence of the diagnostic procedures, narrative history, physical exam or focus or symptoms necessary to warrant the expensive FISH test.

53.     Spellberg's records fail to indicate the performance of such common diagnostic procedures to warrant FISH testing. There was an absence of follow-up urinary analysis, cystoscopy or other diagnostic procedures.

54.     More significantly, office schedules for Spellberg and upon information and belief, others in the practice, show as many as three (3) patients scheduled in a 15 minute time frame. It is physically impossible to provide the examination and medical decision-making

11

necessary to justify a E&M level 4 visit, CPT code 99214, which was routinely falsely billed by Spellberg, and upon information and belief, others in the practice.

55. Available time records for Spellberg show him to have billed for as many as 30 - 50 E&M level 4 patients in a single day. It is virtually impossible to perform that many E&M level 4 visits in a single day.

56. This E&M level 4 billing by Spellberg, and upon information and belief, by others at Naples Urology, resulted in false claims to Government Health Care Programs.

## C. 21st Century's False Billing For Unnecessary FISH Tests and Incentive Payments Made to Encourage Additional Unnecessary FISH Tests

57. 21st Century bills Government Health Care Programs for the unnecessary FISH tests ordered by Spellberg and others.

58. The testing is performed on laboratory equipment owned by 21 Century.

59. 21st Century bills Government Health Care Programs for the unnecessary FISH tests ordered by Spellberg and others, as well as, for the interpretation of those tests. Upon information and belief, the FISH tests are billed using CPT codes 88112 and 88121.

60. Spellberg's fraudulent practices are well-known and encouraged by 21st Century. Following 21st Century acquisition of Naples Urology, the frequency of Spellberg's falsification of urinary test results significantly increased over time, as well as the quantity of unnecessary FISH tests ordered by him.

61. Upon information and belief, 21st Century knows that the quantity of FISH tests ordered is highly disproportionate for the norms in the population being tested.

62.     Further, 21st Century has reviewed Spellberg's files on various occasions and, therefore, knows the number of patients for which he bills for each day.

63.     Upon information and belief, 21st Century encourages Spellberg and other physicians to order unnecessary FISH tests by offering bonuses to them for FISH tests ordered.

64.     Upon information and belief, 21st Century also engaged its physicians in competitions, whereby it would pay the physician at the practice who ordered the most FISH tests in a particular period, a bonus.

65.     For purposes of the 21st Century competitions, Physician Assistants and Nurse Practitioners who practiced under physicians' supervision were included that particular physician's FISH test competition computation.

66.     On information and belief, in 2011, 21st Century rewarded Spellberg's productivity with the gift of new office equipment.

67.     Practitioners working under Spellberg's supervision were routinely chastised by Spellberg if they failed to order FISH tests.

68.     A Nurse Practitioner, who worked under Spellberg, left Naples Urology in May 2012. She quit her position, among other reasons, due to frustration with being yelled at by Spellberg for not ordering FISH tests. This Nurse Practitioner informed Relator that Spellberg promised her bonuses, if she ordered FISH tests because he was receiving bonuses from 21st Century.

13

69.     In May, 2012, a Physician Assistant left the employ of 21st Century and Naples Urology. That Physician Assistant too confided to the Relator that Spellberg had offered a bonus to him if he ordered additional FISH tests.

70.     This Physician Assistant also claimed that Spellberg wanted all practitioners working under his supervision to order FISH tests for all patients. The Physician Assistant noted that to protect himself he put "per Dr. Spellberg" on the patient encounter form for each FISH test he ordered pursuant to Spellberg's demand.

71.     On or about June 18, 2012, internal compliance reviewers from 21st Century Oncology appeared at the Naples Urology offices of 21st Century Oncology. The purpose of the meeting was to instruct the staff in "proper billing". No mention was made of Spellberg's false billing.

## VII.   DEFENDANTS' RETALIATION AGAINST MARIELA BARNES

72.     Ms. Barnes was an employee of Naples Urology until the end of 2009, when 21st Century purchased Naples Urology. From that time until she was forced to leave in 2012, Ms. Barnes was employed by 21st Century.

73.     Ms. Barnes and a few other Naples Urology office employees have questioned the propriety of the number of FISH tests being ordered by Dr. Spellberg and others in the Naples Urology practice.

74.     In late winter, 2011, Ms. Barnes spoke to registered nurse, Cheryl Pool, the manager of the Naples Urology offices, regarding what Relator knew to be an excessive number of FISH tests performed at the practice. Relator was threatened, "This is your job, you have to do what Dr. Spellberg tells you."

DM1\3640890.4

75.     In early June, 2012, Ms. Barnes reported the specifics of Spellberg's false billings to Paris Kirkland Dukes, 21st Century's Human Relations manager for the Naples Urology offices. Jennifer Gruber, 21st Century's Director of Human Resources, was also present at the meeting.

76.     Again Ms. Barnes was threatened by Dukes, in the presence of Gruber, that Barnes was not to discuss her fraud concerns with anyone.

77.     On July 22, 2012, a 21st Century doctor asked Ms. Barnes whether she was considering suing the company.

78.     On July 29, 2012, Ms. Barnes was notified by Dukes that she had to be "re-evaluated" to determine that she was not a threat to herself or others.

79.     On July 30, 2012, Ms. Barnes was escorted from the 21st Century offices and stripped of her company credentials and keys.

80.     Ms. Barnes was later advised by her 21st Century co-workers that 21st Century management informed other employees that Ms. Barnes was terminated.

## CLAIMS FOR RELIEF

### COUNT I: For Damages and Penalties Under the FCA
(Defendants' Violation of 31 U.S.C. § 3729(a)(1), as amended, 31 U.S.C. § 3729(a)(1)(A)

81.     Relator incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

82.     From at least 2008 through at least 2012, Defendants violated the FCA, 31 U.S.C. § 3729(a)(1), and as amended, by knowingly, in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

15

83.     The claims were fraudulent because Defendants made requests or demands for payment from Government Health Care Programs where: (a) the claims contained false and fraudulent information regarding the types and extent of services rendered; (b) there was no medical necessity for the services rendered; (c) test results were falsified to justify the additional services and testing; and (d) claims were made for services never rendered.

84.     The monies Defendants obtained through its false or fraudulent billing for services to Government Health Care Program beneficiaries were provided in whole or in part by the United States.

85.     The United States and Florida were unaware of the falsity of the claims and/or statements which Defendants submitted and/or caused to be submitted to the United States and in reliance on the accuracy thereof, paid Defendants for services that would otherwise not have been paid and/or were ineligible for payment.

86.     The United States and Florida, being unaware of the falsity of the claims and/or statements caused to be made by Defendants and in reliance on the accuracy thereof, paid and continues to pay for Defendants' unlawful Government Health Care Program claims.

87.     Defendants' compliance with the Medicare and state regulations was material to the United States' and Florida's decision to disburse funds to Defendants.

88.     By reason of Defendants' wrongful conduct, the United States has suffered and continues to suffer substantial damages.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the United States:

1) Three times the amount of actual damages which the United States has sustained as a result of Defendants' conduct;

(2) A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the United States;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Relator:

(1) The maximum amount allowed pursuant to § 3730(d) of the FCA and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) An award of reasonable attorney's fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT II: For Damages and Penalties Under the FCA
(Defendants' Violation of 31 U.S.C. § 3729(a)(2), as amended, 31 U.S.C. § 3729(a)(1)(B)

89. Relator incorporates by reference the allegations in each of the preceding

paragraphs as if fully set forth in this paragraph.

90. From at least 2008 through at least 2012, Defendants violated the FCA,

31 U.S.C. § 3729(a)(2), and as amended, by knowingly, in reckless disregard or deliberate

ignorance of the truth or falsity of the information it conveyed, made, used or caused to be made

or used a false record or statement material to a false or fraudulent claim.

91. The claims were fraudulent because Defendants made requests or

demands for payment from Government Health Care Programs where: (a) the claims contained

false and fraudulent information regarding the types and extent of services rendered; (b) there

17

was no medical necessity for the services rendered; (c) test results were falsified to justify the additional services and testing; and (d) claims were made for services never rendered.

92.    The monies Defendants obtained through its false or fraudulent billing for services to Government Health Care Program beneficiaries were provided in whole or in part by the United States.

93.    The United States and Florida were unaware of the falsity of the claims and/or statements which Defendants submitted and/or caused to be submitted to the United States and in reliance on the accuracy thereof, paid Defendants for services that would otherwise not have been paid and/or were ineligible for payment.

94.    The United States and Florida, being unaware of the falsity of the claims and/or statements caused to be made by Defendants and in reliance on the accuracy thereof, paid and continues to pay for Defendants unlawful Government Health Care Program claims.

95.    Defendants' compliance with the Medicare and state regulations was material to the United States' and Florida's decision to disburse funds to Defendants.

96.    By reason of Defendants' wrongful conduct, the United States has suffered and continues to suffer substantial damages.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the United States:

(1)    Three times the amount of actual damages which the United States has sustained as a result of Defendants' conduct;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the United States;

(3)    Prejudgment interest; and

18

DM1\3640890.4

(4)     All costs incurred in bringing this action.

To Relator:

(1)     The maximum amount allowed pursuant to § 3730(d) of the FCA and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3)     An award of reasonable attorney's fees and costs; and

(4)     Such further relief as this Court deems equitable and just

## COUNT III
### Retaliation And Violation Of 31 U.S.C. § 3730(H)
### Mariela Barnes v. 21st Century Oncology

97.     Relator incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

98.     At all times material hereto, 21st Century Oncology was an employer covered by 31 U.S.C. § 3730(h).  Section 3730(h) precludes retaliation, suspension, threats, harassment and other discriminatory conduct against employees who perform any lawful act or conduct in furtherance of any action filed or to be filed under the FCA or who make any other efforts to stop one or more violations of the FCA.

99.     The termination of and threats and harassment against Relator Barnes, as set forth above, were in violation of 31 U.S.C. § 3730(h).

100.    As a direct and proximate result of the retaliation, harassment and threats by 21st Century, Relator Barnes suffered and incurred and continues to suffer and incur loss of compensation and other benefits, harm and damage to reputation and emotional distress.

101.    21st Century's conduct was and is malicious, fraudulent and oppressive in violation of public policy and in violation of 31 U.S.C. § 3730(h).

19

WHEREFORE, Relator Barnes requests that judgment be entered against Defendant, 21st

Century in her favor and that she be awarded any and all relief pursuant to 31 U.S.C. §3730(h)

including, but not limited to:

a.    Two times the amount of back pay;

b.    Interest on back pay;

c.    Any and all other compensatory and special damages;

d.    All litigation and reasonable attorney's fees;

e.    Punitive damages; and

f.    Any such further relief that this Court deems appropriate

## COUNT IV
## DEFENDANTS' VIOLATION OF THE FLORIDA FALSE CLAIMS ACT

102.    Relator incorporates by reference the allegations in each of the preceding

paragraphs as if fully set forth in this paragraph.

103.    This is a *qui tam* action brought by Relator on behalf of the State of

Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla.

Stat. § 68.081 *et seq.*

104.    Fla. Stat. § 68.082(2) provides liability for any person who-

(a)    knowingly presents or causes to be presented to an officer or
employee of an agency a false or fraudulent claim for payment or
approval;

(b)    knowingly makes, uses, or causes to be made or used a false record
or statement to get a false or fraudulent claim paid or approved by an
agency;

105.    From at least 2008 through at least 2012, Defendants violated the Fla.

FCA, Fla. Stat. §  68.082(2)(a) by knowingly, in reckless disregard or deliberate ignorance of the

truth or falsity of the information it conveyed, presented or caused to be presented false or fraudulent claims for payment or approval to Florida.

106.    From at least 2008 through at least 2012, Defendants violated the Fla. FCA, Fla. Stat. §  68.082(2)(b), by knowingly, in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, made, used or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency.

107.    The claims were fraudulent because Defendants made requests or demands for payment from the Florida Medicaid program where: (a) the claims contained false and fraudulent information regarding the types and extent of services rendered; (b) there was no medical necessity for the services rendered; (c) test results were falsified to justify the additional services and testing; (d) claims were made for services never rendered and (e) the claims were not eligible for reimbursement.

108.    The State of Florida, by and through the Florida Medicaid program and other state healthcare programs, was unaware of Defendants' conduct and paid the claims submitted by Defendants.

109.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Florida by Defendants. Compliance with applicable Florida statutes, regulations was also an express condition of payment of claims submitted to the State of Florida.

110.    Had the State of Florida known that false representations were made by Defendants, it would not have paid the claims.

21

111. As a result of Defendants' violations of Fla. Stat. § 68.082(2), the State of

Florida has been damaged.

112. Relator has direct and independent knowledge of the allegations of this

Complaint and has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of herself and

the State of Florida.

WHEREFORE, Relator respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the State of Florida:

(1)     Three times the amount of actual damages which the State of Florida has sustained as a
result of Defendant's conduct;

(2)     A civil penalty of not less than $5,500 and not more than $ 11,000 for each false claim
which Defendant caused to be presented to the State of Florida;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Relator:

(1)     The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable
provision of law;

(2)     Reimbursement for reasonable expenses which Relator incurred in connection with this
action;

(3)     An award of reasonable attorney's fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

### COUNT V
### Retaliation and Violation of Fla. Stat. 68.088
### Mariela Barnes v. 21st Century

113. Relator incorporates by reference the allegations in each of the preceding

paragraphs as if fully set forth in this paragraph.

114.     At all times material hereto, 21st Century Oncology was an employer covered by Fla. Stat. § 68.088. Section 68.088 precludes retaliation, suspension, threats, harassment and other discriminatory conduct against employees who do any lawful act or conduct in furtherance of any action filed or to be filed under the Fla. FCA.

115.     The termination of and the threats and harassment against Relator Barnes, as set forth above, were in violation of Fla. Stat. § 68.088.

116.     As a direct and proximate result of the retaliation, harassment and threats by 21st Century, Relator Barnes suffered and incurred and continues to suffer and incur loss of compensation and other benefits, harm and damage to reputation and emotional distress.

117.     21st Century's conduct was and is malicious, fraudulent and oppressive in violation of public policy and in violation of Fla. Stat. § 68.088.

WHEREFORE, Relator Barnes requests that judgment be entered against Defendant, 21st Century in her favor and that she be awarded any and all relief pursuant to Fla. Stat. § 112.3187 including, but not limited to:

   a.     Front pay

   a.     Back pay;

   b.     Interest on back pay;

   c.     Any and all other compensatory and special damages;

   d.     All litigation costs and reasonable attorney's fees;

   e.     and such further relief that this Court deems appropriate

DM1\3640890.4

YORMAK EMPLOYMENT & DISABILITY LAW

BY: _____
Benjamin H. Yormak, Trial Counsel
Florida Bar I.D. No. 71272
9990 Coconut Road, Suite 206
Bonita Springs, FL 34135
239-985-9691
239-288-2534 (facsimile)
byormak@yormaklaw.com


DUANE MORRIS LLP
Michael M. Mustokoff
(*Special Admission to be filed*)
Mark Lipowicz
(*Special Admission to be filed*)
Teresa N. Cavenagh
(*Special Admission to be filed*)
30 South 17th Street
Philadelphia, PA 19103
215-979-1000

Attorneys for Plaintiff/Relator

24